# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

RENAE LOUISE COLOMBO,

      Plaintiff,

 v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

Case No. 3:10-cv-05620-KLS

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

  Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, the decision to deny benefits should be reversed and this matter should be remanded to defendant for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

  On September 12, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of September 2, 2005, due to severe neck instability, chronic pain and dizziness. See Administrative Record ("AR") 11, 114, 200. Her application was denied upon initial administrative review and on reconsideration. See AR 11, 47, 51. A hearing was held before an administrative law judge ("ALJ") on June 8, 2009, at which plaintiff, represented by

ORDER - 1

counsel, appeared and testified, as did a vocational expert. See AR 27-44. A supplemental hearing also was held before the same ALJ on September 10, 2009, at which plaintiff's counsel, but not plaintiff, appeared. See AR 22-26.

On September 25, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-20. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 8, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981. On August 31, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on November 12, 2010. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in evaluating the opinions of Kim D. Christiansen, D.C., and Michael J. Meno, PA-C; (2) in assessing plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; and (4) in finding plaintiff to be capable of returning to her past relevant work as an administrative assistant. Defendant agrees the ALJ erred in evaluating the lay witness evidence in the record, but argues that remand for further administrative proceedings, rather than an outright award of benefits, is warranted. The Court also finds the ALJ erred in determining plaintiff to be not disabled. For the reasons set forth below, however, the Court agrees with defendant that while the decision to deny benefits should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to

ORDER - 2

support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).
Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767
F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See
Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.
Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational
interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,
579 (9th Cir. 1984).

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may

ORDER - 3

draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

A.   Ms. Christianson

In arguing the ALJ erred in determining her to be not disabled, plaintiff first challenges the ALJ's following findings:

> The majority of the records and opinions found in the medical record are from Kim D. Christensen, DC (Exhibits 3F, 6F, 7F, 17F, and 23F). A chiropractor is also not a best medical source. The claimant had complaints of dizziness, lightheadedness, and neck pain; in December 2005 there were increased complaints of low back pain with left sciatic nerve involvement, and the claimant was given a neck brace to wear in the afternoon and evening to avoid neck flexion; in May 2006 neck pain extending into the left shoulder, and radicular arm complaints when raising or elevating the arm, were added; in July 2006 occasional bilateral lumbar radicular leg pain was added; and in September and October of 2006 there were complaints of lightheadedness present upon getting out of bed in the morning, persisting throughout the day, until the claimant retired at night. Later, complaints of radicular pain in the right arm, numbness in the right fingers, and aching in the jaw and neck were added. Based on the medical model used, the chiropractic diagnosis was right lumbar scoliosis; loss of cervical lordosis at C5-C6; cervical misalignment; and cervical, thoracic, and lumbar myofascial hypertonicity. In contrast to testimony and other statements, the records show periods where the claimant was asymptomatic, such as March 2006 where the claimant reported that her pain level was reduced to zero on a scale of ten. The records from this source show intermittent symptoms in 2005, 2006, and 2007, and then more chronic and strident complaints in 2008 and 2009. Despite the absence of objective findings, in February 2007 the chiropractor wrote that the claimant experiences cervical instability with cervicogenic dizziness due to C5-C6 flexion instability resulting from a 1996 motor vehicle accident (Exhibit 7F). This statement continues, indicating that the claimant is unable to drive a vehicle or work due to permanent dizziness, and that she requires assistance in many areas of daily living. Later, in a February 24, 2009 statement, the chiropractor explains that the claimant has been treated since November 5, 2004 for cervical instability due to C5-C6 flexion instability; this condition is permanent and disabling; and the claimant is unable to drive or work due to permanent dizziness (Exhibit 17F). On June 3, 2009 the chiropractor completed a form in which the claimant is described as able to sit 30 minutes at a time and 4 of 8 hours; stand 10 minutes at a time and 1 of 8 hours; walk 10 minutes at a time and 30 minutes of 8 hours; stand and walk 10 minutes at a time and 30 minutes of 8 hours; may lift and carry a maximum of 5 pounds; is unable to push and pull with either the right or left upper extremity; and

ORDER - 4

would be absent more than 4 days per month (Exhibit 18F). The record also contains May 27, [2]009 statement from this source explaining that the claimant has Barre-Lieou Syndrome, a dysfunction of the posterior cervical sympathetic nervous system, manifested or documented by headache; neck, facial, ear, and dental pain; tinnitus; vertigo; nausea; vomiting; blurred vision; tearing of the eyes; and sinus congestion. While this purported diagnosis is interesting, it is not made by a qualified medical professional; it is at odds with opinions expressed in medical journals; there is no documentation of a number of these symptoms; even with the myriad of symptoms reported by the claimant, her list does not include all of these; and this diagnosis is inconsistent with the findings of neurologists and specialists who have evaluated the claimant.

AR 17.

Plaintiff argues the ALJ did not provide any rationale – other than rejecting the diagnosis of Barre-Lieou Syndrome – for rejecting the work-related limitations found by Ms. Christiansen. The undersigned disagrees. The ALJ expressly pointed out that Ms. Christiansen's own progress notes reveal a long period of time where plaintiff experienced only intermittent symptoms and where, on at least one occasion, she actually was asymptomatic. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimant's capabilities is clear and convincing reason for not relying on that source's assessment); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) (same). The ALJ also specifically noted the absence of objective findings to support Ms. Christiansen's diagnoses and conclusions. See Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings). Accordingly, the Court finds no error by the ALJ here.

B. Mr. Meno

Plaintiff next challenges the following additional findings made by the ALJ:

Several sources have provided statements indicating that the claimant

ORDER - 5

> experiences significant deficits, is incapable of ordinary functioning, and is not able to engage in competitive employment. On May 3, 2007 the source described as the primary care provider completed a questionnaire describing the claimant as able to sit 1 hour at a time and 3 in 8 hours; stand a half hour and 3 in 8 hours; walk a half hour and 2 in 8 hours; stand and walk a half hour and 2 in 8 hours; able to lift and carry 5 pounds frequently and 10 pounds occasionally, but unable to lift and carry 20 pounds; unable to push or pull with the right upper extremity; unable to drive or work around unprotected heights and moving machinery; missing more than 4 days a month; and unable to work due to vertigo and neck pain (Exhibit 16F). The opinion of a primary care provider is normally given significant weight. However, in this instance the opinion and assessment are not supported by objective findings (Exhibits 2F and 10F). More importantly, while the individual may be competent, Michael J. Meno, PA[-C] is a physician's assistant and, consequently, not a best medical source.

AR. 16-17.

As discussed above, an ALJ need no accept the opinion of a treating medical source if it is inadequately supported by clinical findings. Batson, 359 F.3d at 1195. As noted by the ALJ, the questionnaire Mr. Meno completed contains little if any objective clinical findings to support the significant functional limitations contained therein. See AR 449-50. Plaintiff points to the fact that the record contains diagnostic studies showing the presence of a disc bulge and a disc protrusion, as well as some neurological involvement, and that it shows she was given the option of having a surgical diskectomy and artificial disc replacement. See AR 426-27. But the mere existence of an impairment or availability of less conservative treatment options by themselves do not form a sufficient basis upon which to establish the existence of significant work-related limitations, let alone a finding of disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Thus, here too the ALJ did not err in rejected Mr. Meno's opinion.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this

ORDER - 6

credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In regard to plaintiff's credibility in this case, the ALJ found in relevant part:

> . . . After careful consideration of the evidence, the undersigned finds that the medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible

ORDER - 7

> to the extent they are inconsistent with the . . . residual functional capacity
> assessment [made by the ALJ and discussed below].
>
> . . .
>
> As a whole, the objective medical records from acceptable, competent, credible
> sources neither show the problems alleged by the claimant and diagnosed by
> other sources, nor support the degree or level of dysfunction alleged and
> associated with the same. Further, competent [medical] sources . . . show that
> the claimant has reasonable treatment available if she chooses to accept such
> treatment. Even the information from the naturopathic doctor [plaintiff saw in
> March and May 2009] does not reflect the degree of dysfunction alleged and
> reported elsewhere, and also notes improvement. The allegations of the
> claimant also do not serve her well. The objective evidence, including x-rays,
> MRI, and disco gram, shows only minimal vertebrogenic findings. However,
> by way of example, in [an early July 2009] interview with psychologist [Daryl]
> Birney[, Ph.D.,] the claimant reported that she has 3 ruptured cervical discs, a
> clearly erroneous allegation easily refuted by readily available information.
> The claimant alleges significant dizziness so persistent and severe that she is
> unable to function, but objective testing shows only very mild motion
> sensitivity. The medical records also discuss evaluations for symptoms
> thought to be cardiac problems, but results show no objective evidence of a
> problem. While reporting significant pain and dysfunction, when medications
> are listed they include a mild muscle relaxant, Tylenol 3, and medication for
> birth control. The allegations of dysfunction and disability are unsupported by,
> as well as contradicted by, the credible medical evidence of record. . . .

AR 15, 19. The Court finds the ALJ gave valid reasons for discounting plaintiff's credibility here. See AR Smolen, 80 F.3d at 1284 (ALJ may consider testimony that appears less than candid); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of physician to prescribe, and of claimant to request, serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).

The only reason plaintiff specifically challenges here, is the ALJ's determination that her

ORDER - 8

allegations of disabling symptoms is inconsistent with the objective medical evidence in the record, asserting – as she did with respect to the ALJ's evaluation of the opinion provided by Mr. Meno – that there is in fact objective medical evidence. But, as discussed above, that evidence in itself is not sufficient to establish the existence of significant work-related limitations, let alone a finding of disability. Accordingly, once more the ALJ committed no error here.

III.   The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written statements from plaintiff's family members, in which they set forth their observations of her symptoms and limitations. See AR 125-28. In regard thereto, the ALJ stated as follows:

> Statements by family members support the allegations of the claimant. Marlys Metcalf, the claimant's mother, writes that she experiences severe debilitating pain; is often unable to engage in any ordinary activities; and requires routine assistance (Exhibit 2E). The claimant's brother, Brandon Metcalf, writes that his sister experiences neck pain, headaches, chest pain, dizziness, and spells of nausea such that she is often flat on her back (Exhibit 2E). He notes that she is unable to drive, has dizziness, and feels faint. Allison Putnam, the claimant's sister, writes that driving any distance is a strain; the claimant does basic chores and is exhausted by the end of the day; problems focusing the eyes causes difficulty reading; she is only able to hold a 6 month infant for a few minutes; and a wrong movement or slight bump will throw her neck out, causing more pain, dizziness, and other symptoms

ORDER - 9

>(Exhibit 2E). Finally, Michael Colombo, the claimant's husband, writes that she has experienced chronic pain and dizziness for three and a half years; is not able to drive on a regular basis; must wear a neck brace to go down the driveway; and has problems using the right arm, being unable to lift the right arm when neck symptoms are exacerbated (Exhibit 2E). The husband also related that he has taken numerous days off work when the claimant was incapacitated and has received shared leave donated by coworkers. The statements from these sources are consistent and uniform. They are credible in that the sources have reported their observations of activities, complaints regarding symptoms and limitations, explanations related to them, and pain behavior demonstrated in their presence. However, these sources do not have information regarding valid medical factors causing either alleged dysfunction or reported symptoms and whether these are in proportion to objective medical findings.

AR 16. Plaintiff argues, and defendant concedes, that the ALJ erred in rejecting the lay witness evidence in the record for the above stated reason. The Court too finds the ALJ erred here. As both parties note, defendant's own regulations provide that in addition to considering evidence from medical sources, also considered is evidence from other non-medical sources to show the severity of a claimant's impairments and how those impairments affect his or her ability to work. See 20 C.F.R. § 416.913(d); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (family members in position to observe claimant's symptoms and daily activities are competent to testify as to claimant's condition); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 *2 (other sources, such as family members, may have special knowledge of claimant and may provide insight into severity of claimant's impairments and their impact on claimant's ability to function). Thus, the fact that the lay witnesses in this case did not have access to the medical evidence in the record is not a valid basis for rejecting their personal observations of plaintiff's symptoms and limitations.

IV.  The ALJ's Step Four Determination

If a disability determination "cannot be made on the basis of medical factors alone at step

three of [defendant's sequential disability] evaluation process,"[1] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

> **. . . [T]o perform light work . . . , compromised by sitting and standing at will; lifting and carrying 5 pounds frequently and 10 pounds occasionally; no lifting above shoulder height; no frequent reaching; no driving of a motor vehicle; and work involving simple repetitive tasks.**

AR 15 (emphasis in original). At step four of the sequential disability evaluation process, the ALJ found plaintiff could perform her past relevant work as an administrative assistant, finding further in relevant part that:

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.

ORDER - 11

> In her testimony vocational expert Nancy E. Bloom assessed the past work of the claimant, identifying past relevant work, exertional levels, and skill requirements. The vocational expert listed the sedentary skilled position of administrative assistant; the light skilled jobs of bank supervisor and teller supervisor; the light skilled position of bank teller; and the light semiskilled job of office assistant. The work of baker was described as skilled and both light and medium, but it does not appear that this work satisfies the definition of past relevant work. When presented with the residual functional capacity described above, including all limitations and restrictions, vocational expert Bloom explained that the claimant would be capable of performing her past relevant work as an administrative assistant.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this past relevant work, the undersigned finds that the claimant, a younger individual with more than a high school education, was able to perform this work as actually and generally performed, under the description and definition of the vocational expert. . . .

AR 19-20.

Plaintiff argues the ALJ erred in finding her capable of performing such work. She has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden has been met here. First, as noted by plaintiff, despite his statement to the contrary the ALJ did not provide the vocational expert with his complete RFC assessment. Namely, the ALJ left out the no frequent reaching limitation. Instead, the ALJ stated at the hearing that reaching would be "limited to frequent." AR 41. Clearly these are not the same.

As such, the hypothetical question cannot be said to accurately describe all of plaintiff's functional limitations. Because the ALJ's step four determination is based on the testimony of the vocational expert, furthermore, and because that testimony is based on a flawed hypothetical question, it is not at all clear that this determination is supported by substantial evidence. Indeed, also as noted by plaintiff, the description of the job of administrative assistant is described by the Dictionary of Occupational Titles ("DOT") as requiring frequent reaching, which unquestionably

ORDER - 12

would be precluded by the limitation to no frequent reaching contained in the ALJ's assessment of plaintiff's RFC. See DOT 169.167-010.

In addition, again as noted by plaintiff, the job of administrative assistant is described by the DOT as requiring a special vocational preparation ("SVP") of 7, which in turn is defined as requiring an individual to have performed the job for a period of over two years and up to and including a period of four years. See id.; see also DOT, Appendix C (defining SVP as amount of lapsed time required by typical worker to learn techniques, acquire information and develop facility needed for average performance in specific job-worker situation). Because the record shows plaintiff did not perform the job of administrative assistant for the requisite period of time (see AR 162), this too shows the ALJ's step four determination is not supported by substantial evidence. Lastly, although not specifically raised as an issue here by plaintiff, the Court finds the ALJ's error in evaluating the lay witness evidence in the record discussed above, further calls into question not only the accuracy of his assessment of her residual functional capacity, but his step four determination as well.

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

ORDER - 13

administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the lay witness evidence in the record, plaintiff's RFC assessment and her ability to perform her past relevant work, this matter should be remanded to defendant for further administrative proceedings. If on remand it is determined that plaintiff is incapable of performing her past relevant work, then defendant shall proceed on to step five of the sequential disability evaluation process to determine if plaintiff is able to perform other jobs existing in significant numbers in the national economy.

Plaintiff argues the Court should credit the lay witness statements as true in this case, in light of the ALJ's erroneous evaluation thereof. It is true that where lay witness evidence has been improperly rejected, that testimony may be credited as a matter of law. <u>See</u> <u>Schneider v. Barnhart</u>, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear that claimant's limitations were sufficient to meet or equal listed impairment). As noted by the Ninth Circuit, though, the courts do have "some flexibility" in how they apply the "credit as true" rule. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).

Further, unlike here, <u>Schneider</u> dealt with the situation where defendant failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments.

ORDER - 14

223 F.3d at 976. Because other evidence does contradict the lay witness statements in this case – in particular the objective medical evidence in the record, which as discussed above, the ALJ did not err in evaluating – the Court declines to apply the credit as true rule here. Rather, on remand defendant shall reconsider those statements in light of the other evidence in the record regarding plaintiff's impairments and limitations.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court hereby reverses defendant's decision to deny benefits and therefore remands this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

DATED this 11th day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15